UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Eastern Bridge, LLC,
    Plaintiff,

v.                                          Civil No. 05-cv-411-SM
                                              Opinion No. 2006 DNH 061

Bette & Cring, LLC,
    Defendant

## O R D E R

Eastern Bridge, LLC brings this diversity action against Bette & Cring, LLC ("B&C"), seeking damages under breach of contract, unjust enrichment, and quantum meruit theories. It originally filed suit in New Hampshire Superior Court (Sullivan County), but B&C removed the action to this court pursuant to 28 U.S.C. §§ 1441 and 1446. B&C now moves to dismiss Eastern Bridge's claims, asserting that the court lacks personal jurisdiction over it. In the alternative, B&C asks the court to transfer venue to the United States District Court for the Northern District of New York. For the reasons set forth below, B&C's motion is denied.

**Background**

In December of 2003, the parties entered into a contract under which Eastern Bridge agreed to manufacture, and B&C agreed

to purchase, certain steel girders, bracing, and splices for use in a project known as the "Replacement of the Rt. 30 Bridge over Schoharie Creek and Rt. 30 Bridge over Devil's Run," in the Town of Blenheim, New York.  The contract called for B&C to pay Eastern Bridge approximately $800,000 for its goods and services.  But, says B&C, the steel products manufactured by Eastern Bridge failed to meet specifications and, therefore, did not fit properly when workers attempted to install them.  Accordingly, the components were shipped back to New Hampshire and Eastern Bridge attempted to repair/alter those pieces that did not fit.  Even then, says B&C, substantial field modifications were still required.

Needless to say, the parties disagree as to whether Eastern Bridge performed its obligations under the contract.  Eastern Bridge says it did perform its contractual obligations and is owed, but B&C has failed to pay it, approximately $300,000.  B&C, on the other hand, says Eastern Bridge breached the contract by supplying defective steel products that failed to meet project specifications.  And, says B&C, because Eastern Bridge supplied the project with defective steel products, it was forced to incur costs, charges, and penalties totaling approximately $233,000.

**Standard of Review**

A.  <u>Personal Jurisdiction: Statutory and Constitutional Prerequisites</u>.

It is well established that in a diversity case such as this, personal jurisdiction over a nonresident defendant is governed, at least in part, by the forum state's long-arm statute.  See <u>Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.</u>, 982 F.2d 686, 690 (1st Cir. 1993).  And, when personal jurisdiction is contested, the plaintiff bears the burden of establishing that the court has such jurisdiction. <u>See</u> <u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1387 (1st Cir. 1995); <u>Kowalski v. Doherty, Wallace, Pillsbury & Murphy</u>, 787 F.2d 7, 8 (1st Cir. 1986).

Allegations of jurisdictional facts are construed in the plaintiff's favor, <u>see</u> <u>Buckley v. Bourdon</u>, 682 F. Supp. 95, 98 (D.N.H. 1988), and, if the court proceeds based upon the written submissions of the parties without an evidentiary hearing, the plaintiff need only make a <u>prima facie</u> showing that jurisdiction exists.  See <u>Kowalski</u>, 787 F.2d at 8; <u>Boit v. Gar-Tec Products, Inc.</u>, 967 F.2d 671, 674-75 (1st Cir. 1992).  Nevertheless, the plaintiff's demonstration of personal jurisdiction must be based on specific facts set forth in the record in order to defeat a

defendant's motion to dismiss.  See TicketMaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).  And, "in reviewing the record before it, a court 'may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment.'"  VDI Technologies v. Price, 781 F. Supp. 85, 87 (D.N.H. 1991) (quoting Lex Computer & Management Corp. v. Eslinger & Pelton, P.C., 676 F. Supp. 399, 402 (D.N.H. 1987)).

   Before a court may exercise personal jurisdiction over a non-resident defendant, the plaintiff must show, first, that the forum state's long-arm statute confers jurisdiction over the defendant, and second, that the exercise of jurisdiction comports with constitutional due process standards (by establishing that the defendant has sufficient "minimum contacts" with the forum state).  See Kowalski, 787 F.2d at 9-10.  The New Hampshire individual long-arm statute, N.H. Rev. Stat. Ann. ("RSA") 510:4, provides jurisdiction over foreign defendants "to the full extent that the statutory language and due process will allow."  Phelps v. Kingston, 130 N.H. 166, 171 (1987).  Likewise, New Hampshire's corporate long-arm statute, RSA 293-A:15.10, authorizes jurisdiction over foreign corporations and unregistered professional associations to the full extent permitted by federal

law.  See Sawtelle, 70 F.3d at 1388.  Stated another way, New Hampshire's individual and corporate long-arm statutes are coextensive with the outer limits of due process protection under the federal constitution.  Accordingly, the court need only determine whether the exercise of personal jurisdiction over a foreign defendant would comport with federal constitutional guarantees.

To demonstrate that the court may exercise personal jurisdiction over a foreign defendant in a manner consistent with the Constitution, the plaintiff must show that the defendant has "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984) (citation and internal punctuation omitted).  The court must also be satisfied that the defendant's conduct bears such a "substantial connection with the forum State" that the defendant "should reasonably anticipate being haled into court there."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-75 (1985) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

B.   <u>Waiver of the Requirement for Personal Jurisdiction</u>.

Unlike subject matter jurisdiction, which is both a statutory and constitutional requirement, <u>see</u> <u>Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee</u>, 456 U.S. 694, 702 (1982), a party may voluntarily submit itself to the personal jurisdiction of a court.  In other words, it can waive the requirement that a court have personal jurisdiction over it.

> The requirement that a court have personal jurisdiction flows not from Article III, but from the Due Process Clause.  The personal jurisdiction requirement recognizes and protects an individual liberty interest. . . . Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived.

<u>Id</u>. at 702-03.  So, for example, parties are deemed to have waived any objections to a court's exercise of personal jurisdiction over them if they fail to raise such objections in a timely manner.  <u>See</u> Fed. R. Civ. P. 12(h)(1).  Moreover, parties are free to voluntarily relinquish any objections they might have to the exercise of personal jurisdiction over them.  <u>See, e.g.</u>, <u>Burger King</u>, 471 U.S. at 473 n.14 ("[B]ecause the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court.  For example, in the commercial context, parties frequently stipulate

6

in advance to submit their controversies for resolution within a particular jurisdiction.") (citations omitted). See also Unionmutual Stock Life Ins. Co. v. Beneficial Life Ins. Co., 774 F.2d 524, 527 (1st Cir. 1985) (defendant's agreement to arbitrate any disputes in Maine constituted implicit consent to the personal jurisdiction of Maine courts).

With those principles in mind, the court turns to defendant's motion to dismiss.

**Discussion**

A.  B&C Waived its Objections to Personal Jurisdiction.

The contract executed by Eastern Bridge and B&C includes a choice of law provision that states:

> This proposal with Exhibits "A" and "B" constitute the entire agreement between the [B]uyer [B&C] and the Seller [Eastern Bridge] with respect to any goods referred to herein. No change, modification, termination or waiver of any of its provisions shall be valid unless in writing and signed by the party against whom it is sought to be enforced. These terms and conditions shall in all respects be governed by and interpreted under the law of the State of New Hampshire.

Exhibit A to the parties' contract (document no. 6-5) at 2. (emphasis supplied). In a separate section, the contract

7

includes what the court has already construed to be a forum selection clause. See Order dated April 7, 2006 (document no. 15) on plaintiff's motion to remand. That forum selection clause provides that:

> Any disputes between the Seller [Eastern Bridge] and the Buyer [B&C] in any way related to the work to be performed by the Seller under this agreement shall be decided by arbitration, or by a Court of competent jurisdiction under the laws of the State of New Hampshire, whichever shall be chosen first by either part[y].

Exhibit B to the parties' contract (document no. 6-5), at 3. That paragraph, while certainly not a model of clarity, documents the parties' intention to select, in advance of any potential disputes, the fora in which they would be willing to resolve such disputes. The punctuation employed – using commas to separate those two potential fora for dispute resolution – makes clear the parties' desire to provide that any disputes arising out of Eastern Bridge's performance under the contract would be resolved in one of two (and only two) ways, to the exclusion of all others: (1) through arbitration; or (2) in a "Court of competent jurisdiction under the laws of the State of New Hampshire."

While the parties' intent certainly could have been expressed more clearly, the latter option plainly contemplates

that any litigation arising out of the contract would be filed exclusively in a New Hampshire court.  See generally Arguss Communications Group v. Teletron, Inc., No. 99-257-JD (N.H.D. Nov. 19, 1999) (discussing in detail the distinction between mandatory and permissive forum selection clauses).  Moreover, the existence of the earlier (and unambiguous) choice of law clause eliminates any possibility that the language quoted immediately above was intended, in some obscure way, to operate as a choice of law provision, rather than a forum selection clause.

It necessarily follows, then, that by agreeing that litigation arising out of the contract would be conducted exclusively in a court of competent jurisdiction under New Hampshire law, B&C voluntarily relinquished any objection that it might have had to such a court's exercise of personal jurisdiction over it.  Consequently, it's motion to dismiss Eastern Bridge's claims for lack of personal jurisdiction must be denied.

B.  Even if B&C Hadn't Waived its Objections, the Court Would Still have Personal Jurisdiction over It.

Even if B&C had not voluntarily agreed to submit itself to the personal jurisdiction of New Hampshire's courts, this court

would still have personal jurisdiction over it.  Among other things, B&C knew that it had contracted with a New Hampshire company for the production of certain steel products; it knew those products would be manufactured in New Hampshire; when it was discovered that those products were (allegedly) defective, they were shipped from New York back to New Hampshire for cure; and three of B&C's employees traveled to New Hampshire on at least two occasions – first to inspect Eastern Bridge's facilities and negotiate the terms of the contract and later to verify that Eastern Bridge had cured the alleged defects.  See Affidavit of Steven Crowell (document no. 9-2); Supplemental Affidavit of Steven Crowell (document no. 11).

In light of those contacts with the State of New Hampshire, B&C cannot reasonably claim that it did not subject itself to the personal jurisdiction of the courts in this forum with respect to the contract at issue.  First, this litigation arises directly out of its forum-based relationship with a New Hampshire entity. Second, in light of B&C's fairly substantial contacts with this state, it is not unreasonable to conclude that it purposefully availed itself of the privilege of conducting activities in this forum and, in so doing, invoked both the benefits and protections of New Hampshire law.  And, finally, the so-called Gestalt

factors also counsel in favor of litigating the parties' dispute(s) in this forum.  See generally United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992); Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).

C.   A Change of Venue is not Warranted.

Pursuant to 28 U.S.C. § 1404, B&C moves the court to transfer this case to the Northern District of New York.  Section 1404(a) of Title 28 provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Authority to transfer a case pursuant to that statute is committed to the court's broad discretion.  See United States ex rel. La Valley v. First Nat'l Bank, 625 F. Supp. 591, 594 (D.N.H. 1985).  See also 28 U.S.C. § 1406 (authorizing transfer to cure venue defect); 28 U.S.C. § 1631 (authorizing transfer to cure lack of jurisdiction).

As the party seeking a change in venue, B&C bears the burden of demonstrating that transfer is warranted.  See, e.g., Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000).  "But unless

11

the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947) (decided prior to the enactment of section 1404(a), but discussing and applying the related common law doctrine of forum non conveniens).  Here, B&C has failed to demonstrate that, on balance, the equities strongly counsel in favor of transfer.  Among other things, the contract's mandatory forum selection clause weighs heavily against transfer.  Accordingly, in the exercise of its discretion, the court will not disturb Eastern Bridge's choice of forum.

## Conclusion

In light of the foregoing, the court concludes that B&C knowingly and intentionally waived any objections it might have had to a New Hampshire court's exercise of personal jurisdiction over it with respect to the contract at issue.  But, even absent such a waiver, B&C's contacts with this forum are sufficient to warrant the exercise of personal jurisdiction over it.  Finally, B&C has failed to demonstrate that a change in venue is warranted.  Accordingly, defendant's motion to dismiss for lack of personal jurisdiction or in the alternative to transfer venue (document no. 6) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

May 24, 2006

cc: Carl D. Hanson, Esq.
    Lisa A. Wellman-Ally, Esq.
    Nicholas K. Holmes, Esq.

13